FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 19, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER C., | No: 2:17-CV-00425-JTR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 18. Attorney Dana C. Madsen represents Jennifer C. (Plaintiff); Special Assistant United States Attorney Dephne Banay represents the Commissioner of Social Security (Defendant). The parties consented to proceed before a magistrate judge. ECF No. 13. After reviewing the administrative record and briefs filed by the parties, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on February 6, 2011, Tr. 72, 167, alleging disability since December 23, 2010, Tr. 153, due to "Cerebral Vascular Accident Stroke." Tr. 171. The application was denied

initially and upon reconsideration. Tr. 92-98. Administrative Law Judge (ALJ) Marie Palachuck held a hearing on October 2, 2012 and heard testimony from Plaintiff, medical expert James M. Haynes, M.D., psychological expert Donna M. Veraldi, Ph.D., and vocational expert Daniel McKinney. Tr. 35-71. The ALJ issued an unfavorable decision on November 14, 2012. Tr. 15-27. The Appeals Council denied review on January 9, 2014. Tr. 1-6. Plaintiff sought judicial review of the ALJ's November 14, 2012 decision before this Court on March 5, 2014. Tr. 597. On June 11, 2015, District Judge Robert H. Whaley issued an order remanding this case for additional proceedings. Tr. 600-610. On October 21, 2015, the Appeals Council issued an order vacating the November 14, 2012 ALJ decision and remanding this case back to the ALJ for additional proceedings. Tr. 612-14.

On April 28, 2016, the ALJ held a remand hearing and took testimony from Plaintiff and vocational expert Daniel R. McKinney. Tr. 542-61. The ALJ issued an unfavorable decision on May 27, 2016. Tr. 519-35. The Appeals Council denied review on October 19, 2017. Tr. 510-14. The ALJ's May 27, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on December 18, 2017. ECF Nos. 1, 4.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 34 years old at the date of application. Tr. 153. She completed the tenth grade and has not completed her GED. Tr. 172, 346. She stated that she stopped working on September 28, 2007 because her daughter was having difficulties with Bi-Polar issues. Tr. 171. She alleged that her impairments became severe enough to keep her form working on December 23, 2010, Tr. 171, which correlates to the date of her stroke, Tr. 239-40. Her reported work history includes the job of caretaker. Tr. 172.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do

her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs which exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On May 27, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from February 6, 2011 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 6, 2011, the date of application. Tr. 521.

At step two, the ALJ determined that Plaintiff had the following severe impairments: status-post cerebrovascular accident; obesity; major depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder (PTSD). Tr. 521.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 523.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform sedentary work with the following limitations:

> she could stand and/or walk for six hours in an eight-hour day; she could sit for six hours in an eight-hour workday; she could never climb ladders, ropes, or scaffolds; she should avoid all exposure to unprotected heights; she could understand, remember, and carry out simple, routine, and repetitive tasks and instructions; she could maintain attention and concentration on simple routine tasks for two-hour intervals between regularly schedule breaks; she could not exercise judgment or make decisions on the job; she could not perform fast-paced, production rate work (i.e., assembly line work); she could not interact with the public;

and she could only interact with co-workers and supervisors in small groups of three to four individuals.

Tr. 526-27. The ALJ found Plaintiff had no past relevant work. Tr. 533.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of mail clerk, table worker, and garment sorter. Tr. 534. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from February 6, 2011, through the date of the ALJ's decision. Tr. 534-35.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly address Plaintiff's symptom statements and (2) failing to properly weigh the medical opinions. Additionally, Plaintiff asserts that these errors were harmful and requests the Court remand for an immediate award of benefits. ECF No. 14.

**DISCUSSION**[1]

**1.     Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. ECF No. 14 at 12-13.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found that Plaintiff's "malingering behavior during Dr. Arnold's and Dr. Everhart's examinations detracted from the legitimacy of her reported symptoms." Tr. 522. However, neither party addressed this finding of malingering in rejecting Plaintiff's symptom statements in their briefing. ECF Nos. 14 at 12-13, 18 at 4-7. Therefore, the Court highlights the finding but proceeds with addressing whether the other reasons provided by the ALJ meet the specific, clear, and convincing standard. *See Carmickle*, 533 F.3d at 1161 n.2 (The Court may refuse to address issues that are not argued specifically in the briefing).

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." Tr. 527-28. Specifically, the ALJ found that (1) Plaintiff made inconsistent statements regarding her functional abilities, (2) objective medical evidence does not support Plaintiff's allegations (3) Plaintiff repeatedly misstated her history of substance abuse, (4) Plaintiff's lack of treatment was inconsistent with the alleged severity of symptoms, and (5) Plaintiff's reason for leaving her prior job and her poor work history suggests little motivation to work.

Tr. 528-30.

## A. Inconsistent Statements

The first reason the ALJ provided for rejecting Plaintiff's symptom statements, that she made inconsistent statements regarding her functional abilities, is specific, clear and convincing. An ALJ may consider inconsistent statements by a claimant in assessing the reliability of her alleged symptoms and limitations. *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) *citing Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Neither party addressed this reason in their briefing. By failing to challenge a reason in her opening brief, Plaintiff arguably waived the issue. *See Carmickle*, 533 F.3d at 1161 n.2 (The Court may refuse to address issues that are not argued specifically in the briefing). However, since both parties failed to identify this reason, the Court will address it in full.

The ALJ found that "[a]lthough the claimant testified at the hearing that she dragged her right foot when she walked and could only walk one block, she denied any problems walking to Mr. Oliver." Tr. 528. This is supported by substantial evidence. In her hearing testimony, Plaintiff reported that her impairments affected "my balance because last year I fell going up the stairs and I can't pick my feet up right going up and down the stairs or whatever because my foot catches and I think that I've made it, but I don't' and I fall." Tr. 59. She further reported that she fractured her elbow tripping. Tr. 60. At the April 28, 2016 hearing, she testified that she has fallen because "the right leg don't pick up all the way, and I think it does, and I go to step, and it makes me fall." Tr. 548. Yet in her April 18, 2013 evaluation by Richard Oliver, PAC during her state disability claim, Plaintiff "denies problems with walking or with her upper extremities." Tr. 761.

Additionally, the ALJ found that in a report to Mr. Oliver, Plaintiff "denied any problems with her upper extremities, contrary to her testimony that she did not have complete control of her right arm." Tr. 528-29. This too is supported by

substantial evidence. At her October 2, 2012 hearing, Plaintiff reported that her stroke affected her right side: "Like I'll be holding something and then it'll drop, and I don't even notice that it dropped out of my hand until I hear it hit the floor." Tr. 57. At the April 28, 2016 hearing, Plaintiff reported that "sometimes I'll be holding a cup and I won't even notice that I lost it, until I hit - - hear it hit the ground." Tr. 547. This is in direct conflict with her statements to Mr. Oliver during her evaluation for state disability: Plaintiff "denies problems with walking or with her upper extremities." Tr. 761.

In sum, this reason is supported by substantial evidence and meets the specific, clear and convincing standard.

### B. Medical Evidence

The ALJ found that the objective findings of Mr. Oliver did not support Plaintiff's allegations of physical restriction or alleged mental limitations. Tr. 529-30. An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting such testimony. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, it cannot be the only reason the ALJ relies upon for rejecting such testimony. *See Lester*, 81 F.3d at 834 (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects.").

The ALJ specifically pointed to an evaluation by Richard Oliver, PAC and found that it did not support Plaintiff's allegations. Tr. 529. On April 18, 2013, Mr. Oliver completed a physical evaluation in which he found that Plaintiff had no sensory loss, no motor weakness, intact balance and gait, intact coordination, and preserved deep tendon reflexes. Tr. 763. The ALJ found that these normal results failed to support Plaintiff's statements at both hearings about a loss of grip strength

ORDER GRANTING DEFENDANT'S MOTION - 8

and foot drop on the right side. Tr. 57, 59-60, 547-48. This reason is supported by substantial evidence and meets the specific, clear and convincing standard.

The ALJ also found that a nurse practitioner's refusal to issue Plaintiff a disabled parking pass further supported her conclusion that the objective evidence did not support Plaintiff's allegations. Tr. 529. On November 13, 2015, Plaintiff presented to Diane Beernink, ARNP requesting a disabled parking pass. Tr. 770. The physical exam revealed normal strength and tone in the lower extremities. *Id*. Additionally, she found that Plaintiff "[a]mbulates fluidly without assistive device." *Id*. Regardless of whether or not Plaintiff qualified for the parking pass, Nurse Beernink's observation that she ambulated fluidly is inconsistent with Plaintiff's statements regarding her ambulation at the hearing. Therefore, this reason meets the specific, clear and convincing standard.

### C.  History of Substance Abuse

The ALJ found that Plaintiff repeatedly misstated her history of substance abuse. Tr. 529. An ALJ may properly consider evidence of a claimant's substance use in assessing Plaintiff's veracity. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding); *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly considered drug-seeking behavior).

First, the ALJ noted that Plaintiff denied any history of substance abuse to Mr. Oliver, but three months earlier she had reported to Dr. Arnold that she had used drugs until age 27. Tr. 529 *referring to* Tr. 499, 761. The ALJ also supported her determination with evidence of a positive drug screen for methamphetamine at the time of her stroke when she was 34 years old. Tr. 529. However, there is no positive tox screen in the records pertaining to her stroke. Instead, in her interview

with Dr. Arnold, Plaintiff reported that her emergency room labs were positive for methamphetamine at the time of her stroke. Tr. 499. In December of 2012, when Plaintiff was 36 years old, she was admitted to the hospital for an overdose and a urine tox screen was positive for methamphetamine and benzodazepines. Tr. 742. Therefore, the ALJ's determination is supported by substantial evidence because at the time of Plaintiff's report to Dr. Arnold, her statements that there was no recent substance use were suspect.

Additionally, the ALJ pointed out that Mr. Oliver had requested that Plaintiff provide a urine sample as part of her disability evaluation, and she left his office without leaving a sample. Tr. 529. Plaintiff argues her failure to provide a sample was due to her mental health impairments affecting her short-term memory. ECF No. 19 at 4-5. However, this is simply an alternative interpretation of the evidence. When there is evidence that supports both the ALJ's determination and Plaintiff's assertions, such as here, the Court must give deference to the ALJ's interpretation of the evidence. *See Tackett*, 180 F.3d at 1097 (If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.).

Plaintiff argues that S.S.R. 16-3p precludes the ALJ from making a veracity determination and thus her inconsistent reporting of substance abuse cannot be considered when assessing her symptom reports. ECF No. 14 at 12-13. The ALJ acknowledged the potential conflict with S.S.R. 16-3p, stating the following:

> The USDC directed the undersigned to conduct a new credibility determination, but SSA policy recently changed under SSR 16-3p. This ruling requires a determination of the consistency between the claimant's alleged symptoms and the objective evidence rather than a determination of the claimant's credibility. Nonetheless, several instances in the record reflect the claimant's misinformation to care providers, misinformation that could taint the providers' conclusions. The claimant's denial of any drug use history is one of [those] instances.

Tr. 529. The Ninth Circuit has found that S.S.R. 16-3p, makes clear what the circuit precedent already required:

> that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended) (quoting S.S.R. 16-3p). At the same time, other recent Ninth Circuit cases have held that the ALJ may consider a claimant's inconsistent statements in assessing her credibility. *Popa*, 872 F.3d at 906-07. Plaintiff's inconsistencies regarding the history of her substance abuse provide some support for the ALJ's finding that Plaintiff's testimony was not entirely reliable to the extent that it undermines her reported symptoms and their severity during the relevant period. In any event, the ALJ provided other, more specific and convincing reasons for her finding. *See Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid).

### D.   Lack of Treatment

The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that her lack of treatment was inconsistent with the severity of symptoms she alleged, is specific, clear and convincing. Unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication).

The ALJ found that Plaintiff's "non-compliance and lack of treatment suggests that her symptoms were not significantly problematic." Tr. 529. The ALJ cited Plaintiff's failure to follow through with treatment prescribed by Diane

Beernink, ARNP. Tr. 529.[2] On October 16, 2014, Diane Beernink, ARNP prescribed Plaintiff medication for high blood pressure and advised her to return to her office in two weeks for a blood pressure check and lab work. Tr. 767. She did not return to see Ms. Beernink until November 13, 2015. Tr. 770. At this point, she had medical insurance and was being treated for mental health impairments. *Id.* She was instructed to return to the office on November 18, 2015 and December 11, 2015. Tr. 771, 890-91. She did not return to the office until February 25, 2016. Tr. 887. Her failure to follow through with treatment while having medical insurance is supported by substantial evidence and a specific, clear and convincing reason to reject her symptom statements.

### E. Little Motivation to Work

The ALJ's fifth reason for rejecting Plaintiff's symptoms statements, that her reason for leaving her prior job and poor work history suggests little motive to work, is specific, clear and convincing. The Ninth Circuit has found that the reasons for leaving employment and a poor work history can support a rejection of Plaintiff's symptom statements. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly relied on the fact that claimant left his job because he was laid off, rather than because he was injured, in finding the claimant's statement unreliable); *Thomas*, 278 F.3d at 959 (An ALJ's finding that the claimant had limited work history and "ha[d] shown little propensity to work in her lifetime" was a specific, clear, and convincing reason for discounting the claimant's testimony.).

Here, the ALJ found that Plaintiff's statements to Dr. Arnold "suggests that

---

[2]The ALJ stated that Plaintiff was instructed to follow up in one month for a referral for neurology. Tr. 529. However, the record indicates Plaintiff was instructed to follow up in two weeks for additional blood pressure reading and lab work. Tr. 767. While the ALJ was inaccurate on the time and reason for the follow up, the fact remains that Plaintiff failed to follow the treatment prescribed.

she only stopped working because of family issues rather than a personal inability to work, and her longstanding history of unemployment shows little motivation to return to work." Tr. 531.

At application and in her discussion with Dr. Arnold, Plaintiff reported that she stopped working because her daughter was experiencing symptoms of bi-polar disorder and Child Protective Services was involved. Tr. 171, 501. A review of Plaintiff's earning history shows that she worked in 1998, earning a total of $1,571.63, in 2003 earning a total of $273.40, in 2005 earning a total of $32.00, and in 2007 earning a total of $15.86. Tr. 163-64. Therefore, the ALJ's determination is supported by substantial evidence.

Plaintiff failed to challenge this reason in her opening briefing. ECF No. 14. In her response briefing, Plaintiff asserted that the reason Plaintiff stopped working in 2007 was irrelevant to the case because she did not claim an inability to work until her stroke in 2010. ECF No. 19 at 2. Plaintiff is accurate that her reasons for leaving her employment in 2007 is not in direct conflict with an allegation of disability beginning in 2010. However, the ALJ's reliance on her reason for leaving her last job when combined with her very limited work history supports the determination that Plaintiff had little motivation to work. As such, this reason meets the specific, clear and convincing standard.

**2. Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by John Arnold, Ph.D., and the Global Assessment of Functioning (GAF) scores assessed by Dr. Arnold and Charles Ragan, M.D. ECF No. 14 at 13-15.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81

F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A. John Arnold, Ph.D.

On January 9, 2013, Dr. Arnold completed a Psychological Assessment Report. Tr. 499-509. He diagnosed Plaintiff with a rule out undifferentiated somatoform disorder, major depression, panic disorder with PTSD features, cognitive disorder rule out malingering with respect to severity, personality disorder and rule out borderline intellectual functioning. Tr. 503. He completed a Mental Medical Source Statement opining that Plaintiff had a severe limitation in the ability to maintain attention and concentration for extended periods, a marked limitation in eleven areas of mental functioning, and a moderate limitation in an additional four areas of mental functioning. Tr. 504-06.

The ALJ gave Dr. Arnold's responses on the Mental Medical Source Statement little weight because the ratings were unsupported by (1) the longitudinal evidence and (2) Dr. Arnold's own findings. Tr. 531. Both these reasons meet the

specific and legitimate standard required to address the contradicted opinion of an examining physician. *See Batson*, 359 F.3d at 1195 (Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions.); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that an ALJ may cite internal inconsistencies in evaluating a physician's report).

Plaintiff's challenge to the ALJ's treatment of Dr. Arnold's opinion amounts to an assertion that the pattern of malingering identified by the ALJ is not supported by substantial evidence. ECF No. 14 at 15. Therefore, the Plaintiff failed to assert any specific challenge to the ALJ's first reason, that the opinion was not supported by the longitudinal evidence. As such, this Court will not consider the issue further. *See Carmickle*, 533 F.3d at 1161 n.2 (The Court may refuse to address issues that are not argued specifically in the briefing).

Plaintiff arguably challenged the ALJ's second reason for rejecting the opinion, that it was inconsistent with Dr. Arnold's own findings, in her assertion that pattern of malingering was not supported by substantial evidence. ECF No. 14 at 15. Here, the ALJ found that "Dr. Arnold's conclusions are based on incomplete testing and the claimant's attempt to impede accurate testing of her mental limitations." *Id*. The ALJ determined that Dr. Arnold's findings did not support his opinion because (1) Plaintiff only completed two-thirds of the first three tests, (2) his report that Plaintiff's efforts appeared "questionable" at times, and (3) his report that Plaintiff's headaches could have "delusional or quasi-delusional features, along with some secondary gain dynamics," Tr. 531 *citing* Tr. 502. The ALJ also relied on Dr. Arnold's diagnosis of rule out malingering with respect to severity of any cognitive disorder, Tr. 503, as further support for her rejection of the opinion, Tr. 531. The ALJ also referred to Plaintiff reporting misinformation regarding her substance abuse throughout the record, Tr. 532, which has been addressed above as supported by substantial evidence.

In response, Plaintiff asserts that Dr. Arnold found this potentially

malingering behavior as part of her disorder and that Dr. Veraldi did not find Plaintiff to be malingering. ECF No. 14 at 15. However, this argument amounts to an alternative interpretation of the evidence. In an April 8, 2011 evaluation, Joyce Everhart, Ph.D. found Plaintiff had "some clear evidence of malingering" based on the results of the TOMM and diagnosed her with malingering. Tr. 347-49. At the October 2, 2012 hearing, Dr. Veraldi testified that Plaintiff's TOMM results "does raise questions about her level of effort on some of the other tests of memory, so that does become a concern." Tr. 46. Dr. Arnold stated that "[t]hese behaviors, along with Dr. Everhart's report findings, suggest, albeit unsophisticated, some attempt at appearing more impaired than warranted. Although seen by this examiner as probably more an extension of her personality dynamics, these issues need consideration in her overall diagnostic picture." Tr. 502. If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Here, considering the evidence can rationally be interpreted either way, the Court upholds the ALJ's determination that Plaintiff exhibited a pattern of malingering. Thus, the ALJ's determination was supported by substantial evidence.

**B.     GAF Scores**

Plaintiff asserts that the ALJ erred in her treatment of the GAF scores of Dr. Arnold and Dr. Ragan. ECF No. 14 at 15.

At the end of his evaluation, Dr. Arnold gave Plaintiff a current GAF score of 50 and a past year score of 50. Tr. 503. At the hospital following Plaintiff's attempted suicide by overdose, Dr. Ragan completed a psychological evaluation. Tr. 748-51. He gave her a GAF score of "estimated to be 30 and in the past year 45." Tr. 750.

Plaintiff's challenge to these scores consists of a single sentence with no citation to the evidence or legal analysis for support: "While the ALJ afforded little to no weight to the low GAF ratings found by Dr. Arnold and the doctor who treated

[Plaintiff] at the hospital at the time of her suicide attempt, the fact is the GAF ratings are entirely consistent with the record." ECF No. 14 at 15. This is insufficient briefing for the Court to efficiently assess the challenge to the ALJ's treatment of the GAF scores. Therefore, the Court declines to consider the issue. *See Carmickle*, 533 F.3d at 1161 n.2. The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. Particularly on appeal, we have held firm against considering arguments that are not briefed. But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[3] Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to provide adequate briefing, the court declines to consider this issue.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

---

[3]Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED March 19, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE